UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANGELO A. CARZOGLIO,

                              Plaintiff,                          18-cv-4198 (NSR)

            -against-                                            OPINION & ORDER

THOMAS ABRAMS et al,

                              Defendants.

NELSON S. ROMÁN, United States District Judge:

Plaintiff Angelo A. Carzoglio ("Plaintiff"), proceeding *pro se*, commenced this § 1983 action against Karl Vollmer, Sgt. Middleton, Sgt. I. Lopez, Westchester County (together, the "County Defendants"), King-Bogle, Correct Care Solutions (together, the "Medical Care Defendants"), Aramark Corporation ("Aramark"), and Thomas Abrams ("Abrams") on May 10, 2018. (*See* Complaint ("Compl."), ECF No. 2.) In this action, Plaintiff alleges claims sounding in the Fourth and Fourteenth Amendments to the United States Constitution related to his incarceration at the Westchester County Jail in 2017. (*See id.*) Specifically, Plaintiff's Complaint suggests that he was subjected to unreasonable searches in violation of the Fourth Amendment and that he suffered unreasonable verbal harassment in violation of his Fourteenth Amendment Due Process rights. (*See id.*) Plaintiff also alleges claims pertaining to the pricing, shipping, and handling of food and commissary products at the Westchester County Jail. (*See id.*)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Medical Care Defendants, Defendant Aramark, and the County Defendants (the "Moving Defendants") have each moved to

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/25/2020

1

dismiss the Complaint.[1]  (*See* ECF Nos. 33, 44, and 51.)  For the following reasons, these motions to dismiss are GRANTED in their entirety.

## BACKGROUND

### I.  Factual Allegations

The following facts are derived from the Complaint or matters of which the Court may take judicial notice and are taken as true and constructed in the light most favorable to *pro se* Plaintiff for the purposes of this motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).  The Court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  The Court may also consider documents subject to judicial notice, such as public records.  *See Shmueli v. City of New York*, 424 F.3d 231, 233 (2d Cir. 2005) ("The . . . [s]tate prosecution of [an individual] is a matter of public record, of which [a court may] take judicial notice."); *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *see also Awelewa v. New York City*, No. 11 CIV. 778, 2012 WL 601119, at *2 (S.D.N.Y. Feb. 23, 2012) ("Judicial notice may be taken of public records, including 'arrest reports, criminal complaints, indictments, and criminal disposition data.'"); *Blount v. Moccia*, No. 1:16-CV-4505-GHW, 2017 WL 5634680, at *2 n.5 (S.D.N.Y. Nov. 21, 2017) (taking judicial notice of grand jury indictment and collecting cases); *Colliton v. Bunt*, No. 15-CV-6580 (CS), 2016 WL 7443171, at *5 (S.D.N.Y. Dec. 27, 2016), *aff'd*, 709 F. App'x 82 (2d

---

[1] Abrams has not filed a motion to dismiss, nor has he appeared in this action.  Because Abrams is a former Westchester County corrections officer, the Court issued a *Valentin* order directing the Westchester County Attorney's Office to provide an address where Abrams could be served.  (*See* ECF No. 6.)  On June 18, 2018, the County informed the Court that Abrams was incarcerated at Mid-State Correctional Facility.  (*See* ECF No. 20.)  Abrams was served on July 29, 2018, but has not filed an appearance in this action.  (*See* Marshal's Process Receipt and Return of Service Executed, ECF No. 24.)  His answer was due on September 27, 2018.  (*See id.*)  Upon review of DOCCS records, the Court has discovered that Abrams is no longer housed at Mid-State Correctional Facility.

Cir. 2018) (taking judicial notice of transcript of guilty plea and sentencing).

The Complaint addresses several incidents that occurred at the Westchester County Jail beginning on May 19, 2017. (*See* Compl. at 6.) During the relevant period, Plaintiff was a pre-trial detainee. (*See* Carey Decl., ECF No. 52, Ex. D (PMC Letter), at 2 (referencing and appending the Uniform Sentence & Commitment in *State v. Angelo Carzoglio*, Case No. 00536-2016 (Westchester Cnty. Ct. Jan. 24, 2018)).)

### a. Incidents in May and June 2017

On May 19, 2017, senior jail guard supervisor Defendant Thomas Abrams ("Abrams") ordered two other jail guards and another supervisor to pat frisk and strip search Plaintiff. (*See* Compl. at 6.) Abrams also ordered the three correctional officers to "tamper with [P]laintiff's legal materials." (*Id.*)

Later, on June 8, 2017, Abrams ordered two jail guards to "humiliate" Plaintiff by performing a pat frisk and strip searching Plaintiff, removing all of his clothes, and verbally sexually harassing Plaintiff. (*Id.*) Plaintiff alleges that Abrams "enjoy[ed] himself while watching the surveillance video of the plaintiff being physically searched and humiliated upon his order." (*Id.*) Days later, on June 12, 2017, Abrams was arrested for "child sex crimes." (*Id.*)

Plaintiff filed an inmate grievance form regarding these incidents, (*id.* at 9–11, (Ex. A)), and appealed his grievance to Defendant Karl Vollmer ("Vollmer"). Vollmer responded on July 3, 2017. (*Id.* at 12 (Ex. B).) Plaintiff further appealed his grievance to the "Citizen's Policy and Complaint Review Council," but did not receive a copy of a response. (*Id.* at 6–7.)

### b. Aramark's Commissary and I-CARE Food Products

In or around September 2017, Plaintiff filed an administrative grievance regarding Defendant Aramark ("Aramark"), and Aramark's "pricing, shipping, and handling of the I-CARE

package food products that are prepared . . . on the facility grounds." (*Id.* at 8.) According to Plaintiff, the over-pricing of commissary, canteen, and I-CARE products inside the facility was "astronomical." (*Id.*) Furthermore, Aramark employees sold hot food to favored detainees. (*Id.*) Aramark handles, cooks, and serves the food at the facility. (*Id.*)

Plaintiff states he did not receive a copy of this grievance after filing it. (*Id.* at 7.) Subsequently, jail guard supervisor Defendant Sergeant Middleton ("Middleton") denied Plaintiff's grievance form. (*See id.* at 13 (Ex. C)). Plaintiff appealed this grievance to the Assistant Warden, Defendant Karl Vollmer ("Vollmer"), but Vollmer also denied Plaintiff's grievance. (*See id.* at 14 (Ex. D).)

### c. November 25, 2017 Incident

In a separate incident, on November 25, 2017, Defendant King-Bogle—described in the Complaint as the "health care gatekeeper" employed by Correct Care Solutions—entered the prisoner cell block "screaming, cursing and yelling, while acting erratic and disrespectful," and stopped in front of Plaintiff's cell. (*Id.* at 8.) She then cursed at Plaintiff and threatened to tamper with his medication and "issue the fatal dose." (*Id.*) That same day, Plaintiff filed an inmate grievance against King-Bogle and submitted it to jail guard supervisor Defendant I. Lopez ("Lopez"). (*Id.*) In response, Lopez denied Plaintiff's grievance, stating that King-Bogle denied Plaintiff's allegations and that King-Bogle had not medicated Plaintiff in approximately four months. (*Id.* at 17 (Ex. F).) Plaintiff then filed an appeal of his grievance to the Chief Administration Officer, Defendant Karl Vollmer. (*Id.* at 8.) Vollmer also denied Plaintiff's grievance. (*See id.* at 18 (Ex. G).) Plaintiff states that he has previously filed several grievances against King-Bogle, but copies of these grievances were not returned to Plaintiff, and "the appeal procedures were ignored." (*Id.* at 8.)

**LEGAL STANDARD**

## I.     12(b)(6)

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Factual allegations must "nudge [a plaintiff's] claim from conceivable to plausible." *Twombly*, 550 U.S. at 570. A claim is plausible when the plaintiff pleads facts which allow the court to draw a reasonable inference the defendant is liable. *Iqbal*, 556 U.S. at 678. To assess the sufficiency of a complaint, the court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). While legal conclusions may provide the "framework of a complaint," "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678–79.

*Pro se* complaints are to be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). They must be held to less stringent standards than complaints written by lawyers, and only dismissed when the plaintiff can prove "no set of facts in support of his claim which would entitle him to relief." *Estelle*, 429 U.S at 106 (quoting *Conley v. Gibson*, 335 U.S. 41, 45–46 (1957)). This "is particularly so when the *pro se* plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). *Pro se* complaints must be interpreted as raising the strongest claims they suggest, but "must still state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

## II. 42 U.S.C. § 1983 Claims

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under § 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

## DISCUSSION

## I. Claims Regarding Aramark's Commissary Items and I-CARE Packages

Plaintiff's allegations with respect to Defendant Aramark generally take issue with the pricing, shipping and handling of I-CARE packaged food products and the over-pricing of commissary, canteen, and I-CARE products. (*See* Compl. at 8.) As a result, Plaintiff alleges he sustained "severe, psychological mental anguish, cruel and unusual punishment, humiliation" and "harsh mental emotions," including "embarrassment" and "stress." (*Id.* at 7.)

The Complaint does not contain any indications regarding how Aramark's provision of the aforementioned commissary and food package services violated Plaintiff's constitutional rights. In response to Plaintiff's grievances, Defendant Middleton explained that correctional institutions

are permitted to charge taxes on sales of commissaries and canteens; that shipping and handling charges are discretionary; that hot meals are a privilege that is not guaranteed to all inmates; and that the Aramark food tray portions have been confirmed to be of "proper nutritional value." (*See* Compl. at 13.) On appeal, Defendant Vollmer reaffirmed that "Aramark is operating within all applicable laws and regulations as outlined in [Middleton's] memo." (*Id.* at 14.)

Plaintiff's allegation that the meals cooked and served by Aramark employees "is a clear and present showing of favoritism" (*id.*) is vague, conclusory, and devoid of any factual support from which the Court could surmise any plausible legal claim. *See Hines v. Smith*, No. 04 CIV. 5903 (PAC), 2006 WL 2038454, at *6 (S.D.N.Y. July 17, 2006), *aff'd*, 253 F. App'x 81 (2d Cir. 2007) (finding inmate failed to state a claim against corrections officer where plaintiff alleged, among other things, that extra food was offered to other inmates and that the officer showed favoritism toward another inmate). A general allegation of favoritism, without more, does not suffice to plead a legally cognizable claim. *See generally Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (observing a *pro se* plaintiff's pleadings must contain factual allegations that sufficiently "raise a right to relief above the speculative level"); *Geldzahler v. N.Y. Med. College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (noting the court's duty to construe the complaint liberally is not "the equivalent of a duty to re-write it").

Moreover, to the extent that the Complaint may be construed to contain allegations of price gouging, those claims also fail. Courts have repeatedly concluded that inmates do not have a constitutional right to use a prison commissary, to challenge prices, or to mandate what items are sold. *See, e.g., Ford v. Aramark*, No. 18-CV-2696 (NSR), 2020 WL 377882, at *9 (S.D.N.Y. Jan. 23, 2020) (dismissing claims that prices of types of items sold at commissary violated the Constitution); *Whitenack v. Armor Med.*, No. 13-CV-2071 SJF ARL, 2013 WL 2356110, at *4

(E.D.N.Y. May 28, 2013) (dismissing claims that prison commissary did not sell any nutritious foods and was overpriced); *Mitchell v. City of New York*, No. 10 Civ. 4121(PKC), 2011 WL 1899718, at *2 (S.D.N.Y. May 13, 2011) ("[T]he prices and product selections offered by prison food vendors cannot give rise to a constitutional violation."); *Davis v. Shaw*, No. 08 Civ. 364(NRB), 2009 WL 1490609, at *1 (S.D.N.Y. May 20, 2009) (denying Section 1983 claim premised on commissary's excessively high prices and its failure to offer sugar-free or salt-free foods).

Because Plaintiff's commissary claims against Defendant Aramark—including claims of favoritism and price gouging—fail as a matter of law, such claims are dismissed with prejudice.

## II. Plaintiff's Claims Against Medical Care Defendants

Plaintiff's claims regarding the November 25, 2017 incident with Defendant King-Bogle appear to allege that King-Bogle subjected Plaintiff to verbal abuse and threats regarding his medical treatment and medications. (*See* Compl. at 8.) Plaintiff does not allege that his medications were actually tampered with. As noted above, Plaintiff has generally alleged injuries including "severe, psychological mental anguish, cruel and unusual punishment, humiliation," "harsh mental emotions," "embarrassment" and "stress." (*Id.* at 7.)

Because Plaintiff was a pretrial detainee at the time of the incident, his claims are analyzed under the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishment Clause of the Eighth Amendment. *See Edrei v. Maguire*, 892 F.3d 525, 533 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 2614, 204 L. Ed. 2d 263 (2019) ("Those incarcerated for a criminal conviction draw on the Eighth Amendment's ban on 'cruel and unusual punishments.' Meanwhile, pretrial detainees and non-incarcerated persons rely on the constitutional guarantee of 'due process.'"); *Holland v. City of New York*, 197 F. Supp. 3d 529, 545 (S.D.N.Y. 2016) (quoting *City*

*of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) ("[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.").

To make out an excessive force claim under the Due Process Clause of the Fourteenth Amendment, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473, 192 L. Ed. 2d 416 (2015); *Johnson v. Turnbill*, 715 F. App'x 84, 85 (2d Cir. 2018). "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). In assessing "objective reasonableness," the Supreme Court has instructed that:

> A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. A court must also account for the "legitimate interests that stem from the government's need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in the judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security."

*Id.* (internal brackets omitted) (citing *Graham*, 490 U.S. at 396) (quoting *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979)).

It is well-settled that pre-trial detainees do not have cognizable § 1983 claims based on allegations of verbal harassment and/or abuse. *See Demuth v. Cowley*, No. 918CV807DNHATB, 2019 WL 7484047, at *4 (N.D.N.Y. Oct. 3, 2019), *report and recommendation adopted*, No. 918CV807DNHATB, 2020 WL 58614 (N.D.N.Y. Jan. 6, 2020) (dismissing pretrial detainee's verbal harassment claim and noting "[i]t is well-settled that verbal harassment, no matter how inexcusable it may be, does not rise to the level of a constitutional violation."); *Byrd v. City of New York*, No. 17 CIV. 2166 (AJP), 2018 WL 259316, at *5 & n.5 (S.D.N.Y. Jan. 2, 2018) (observing

that "[v]erbal harassment generally fails to satisfy the objective component for detainee claims because isolated instances of verbal harassment do not involve a harm of federal constitutional proportions.") (internal quotations omitted); *Corley v. City of New York*, No. 1:14-CV-3202-GHW, 2017 WL 4357662, at *13 (S.D.N.Y. Sept. 28, 2017) ("[T]o state a claim . . . a [pretrial detainee] plaintiff must show that he suffered actual physical harm; '[v]erbal harassment and name calling, absent physical injury, are not constitutional violations cognizable under § 1983.'") (quoting *Bouknight v. Shaw*, No. 08-cv-5187, 2009 WL 969932, at *3 (S.D.N.Y. Apr. 6, 2009)); *Henrius v. Cty. of Nassau*, No. 13-CV-1192 SJF SIL, 2015 WL 5542464, at *16 (E.D.N.Y. Sept. 16, 2015) (finding pretrial detainee's allegations "even if rising to the level of verbal harassment, do not state a claim for a constitutional violation.").[2]

Here, the only allegations that Plaintiff has made with respect to the Medical Care Defendants (King-Bogle and Correct Care Solutions) are those regarding King-Bogle's statements. While Plaintiff's injuries are described generally as "extreme and outrageous" and causing Plaintiff to seek psychological treatment, (*see* Compl. at 7), none of these injuries are directly attributable in the Complaint to King-Bogle's statements. Because Plaintiff has not alleged any injuries beyond verbal abuse—which courts have found to be insufficient to sustain a constitutional violation—this claim must be dismissed without prejudice. To the extent Plaintiff is able to allege additional facts regarding any serious harm as a result of King-Bogle's conduct

---

[2] While Eighth Amendment excessive force jurisprudence "d[oes] not control the standard for excessive force claims under the Fourteenth Amendment," *Darnell v. Pineiro*, 849 F.3d 17, 34 (2d Cir. 2017), courts have considered similar allegations of verbal abuse and found that, even if vile and objectionable, they do not rise to the level of a constitutional violation. *See Vaughn v. Strickland*, No. 12 CIV. 2696 JPO, 2013 WL 3481413, at *5 (S.D.N.Y. July 11, 2013) (holding prison guard's threat that inmates "shut the fuck up" or he would "place a shank on [them]," although "inappropriate and threatening if true, [does] not rise to the level of an Eighth Amendment violation"); *Jones v. Harris*, 665 F. Supp. 2d 384, 396 (S.D.N.Y. 2009) (collecting cases); *Moncrieffe v. Witbeck*, No. 97-CV-253, 2000 WL 949457, at *3 (N.D.N.Y. June 29, 2000) (allegations that corrections officer laughed at inmate not actionable under Section 1983); *Carpio v. Walker*, No. 95-CV-1502, 1997 WL 642543, at *6 (N.D.N.Y. Oct. 15, 1997) ("[v]erbal harassment alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not rise to the level of an Eighth Amendment violation.").

that goes beyond verbal abuse, he is granted leave to replead his claim. *See Barnes v. United States*, 204 Fed. Appx. 918, 919 (2d Cir. 2006) (summ. order) (recognizing that a *pro se* complaint "should not be dismissed without granting leave to replead at least once when [a liberal] reading gives any indication that a valid claim might be stated" (quotations omitted)).

## III. Plaintiff's Claims Against Abrams and the County Defendants

### a. Claims Against Abrams

Plaintiff's allegations against Abrams involve two "illegal" pat frisks and strip searches that occurred on May 19, 2017 and June 8, 2017, during which he was verbally and sexually harassed. (*See* Compl. at 6.) Plaintiff alleges that Abrams ordered these searches in order to "humiliate" and "harass" Plaintiff and for Abrams's own gratification. (*See id.* at 6, 11.) Plaintiff further alleges that the searches were "redundant," "repetitive," and conducted "maliciously" and in a "capricious manner." (*See id.* at 6, 11.) Thus, Plaintiff appears to claim that Abrams conducted illegal searches on those two dates in violation of the Fourth Amendment, which protects both prisoners and pretrial detainees from unreasonable searches. *See Bell v. Wolfish*, 441 U.S. 520, 545, 559 (1979).

The Fourth Amendment requires that searches of prison inmates be "reasonably related to legitimate security interests." *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 328 (2012) (quoting *Turner v. Sqfley*, 482 U.S. 78, 89 (1987)). In order to determine the reasonableness of a strip search, courts must consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 559. "[S]trip searches performed with no legitimate penological purpose but merely to intimidate, harass, or punish are impermissible." *George v. City of New York*, No. 12 CIV. 6365 PKC JLC, 2013 WL 5943206, at *7 (S.D.N.Y. Nov. 6, 2013). And even

when a search is justified by a legitimate penological interest, "it can become unreasonable where the search is conducted in an abusive manner or in the presence of unnecessary spectators." *Sankara v. Plaskett*, No. 15-CV-8470 (KBF), 2017 WL 4444250, at *3 (S.D.N.Y. Oct. 4, 2017) (citing *Bell*, 441 U.S. at 560; *Harris v. Miller*, 818 F.3d 49, 60, 62 (2d Cir. 2016)).

Here, Plaintiff has alleged that Abrams ordered the pat frisks and strip searches for the purpose of harassing and humiliating him. Construing the complaint liberally, as the Court must, the Court finds this is sufficient to state a plausible claim for relief. *See George*, 2013 WL 5943206, at *8 (denying motion to dismiss Fourth Amendment claims "[b]ecause the plaintiffs have adequately and plausibly alleged that the strip search was conducted to 'make a spectacle of [the inmates] for the new recruits' and to publicly humiliate the plaintiffs").

### b. Claims Against Vollmer, Lopez, and Middleton in Their Individual Capacities

Plaintiff alleges that Defendants Vollmer, Lopez, and Middleton denied his grievances regarding the May, June, and November 2017 incidents and his concerns regarding the commissary items. (*See* Compl. at 6–8, 11.) However, a "defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Grullon v. City of New Haven*, 720 F.3d 133, 138–39 (2d Cir. 2013). Instead, "a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity." *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) (emphasis added) (internal quotation marks omitted), *cert. denied sub nom. Brooks v. Pataki*, 137 S. Ct. 380 (2016). As the Second Circuit has explained, the personal involvement of a supervisory defendant may be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed

to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[3]  For the reasons outlined below, the Court finds that these claims fail to adequately allege Defendants Vollmer, Lopez, and Middleton's respective personal involvement in the alleged constitutional violations.

### i. Vollmer

Vollmer denied Plaintiff's grievance regarding the May and June 2017 pat-frisks and strip searches.  (*See* Compl. at 6.)  In the denial memorandum, Vollmer explains that Plaintiff filed the grievance "far outside the acceptable time frame," and that the grievance appeared to be "solely based on events involving former Capt. Abrams not connected to the jail."  (*See id.* at 12.)  Furthermore, Vollmer also affirmed Middleton's denial of Plaintiff's grievance regarding the commissary, finding that "Aramark is operating within all applicable laws and regulations."  (*See* Compl. at 14.)  Vollmer also affirmed Lopez's denial of the grievance regarding King-Bogle's verbal abuse, stating that the officer's report, a "third party account[,] indicates the very opposite of what you allege. . . . [A]ccording to the statements it was you who initiated this disrespectful commentary."  (*See* Compl. at 8, 18.)  The Court has already dismissed Plaintiff's claims regarding

---

[3] Although there is some disagreement within this circuit, "[t]he majority of the district courts [in this circuit] . . . have held that, absent any contrary directive for the Second Circuit, all five *Colon* factors survive where the constitutional violation at issue does not require a showing of discriminatory intent." *Allah v. Annucci*, No. 16-CV-1841 (KMK), 2017 WL 3972517, at *6 (S.D.N.Y. Sept. 07, 2017) (quoting *El-Hanafi v. United States*, No, 13-CV-2072, 2015 WL 72804, at *13 (S.D.N.Y. Jan. 6, 2015)) (collecting cases).  This Court has already expressed its agreement with that proposition and will apply it with equal force here.  *See Booker v. Griffin*, No. 16-CV-00072 (NSR), 2018 WL 1614346, at *11 (S.D.N.Y. Mar. 31, 2018); *Marshall v. Annucci*, No. 16-CV-8622 (NSR), 2018 WL 1449522, at *9 (S.D.N.Y. Mar. 22, 2018); *Matteo v. Perez*, No. 16-CV-1837 (NSR), 2017 WL 4217142, at *5 (S.D.N.Y. Sept. 19, 2017).  Because Plaintiff's claims against the County Defendants do not relate to allegations of discrimination, the Court will consider all five *Colon* factors.

the commissary and King-Bogle's comments. Therefore, the only unresolved issue with respect to Vollmer's involvement is regarding the pat-frisk and strip search allegations.

Plaintiff attempts to allege the personal involvement of Vollmer under the second *Colon* factor (i.e., "the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong"). *Colon*, 58 F.3d at 873. But beyond putting Vollmer on notice of Plaintiff's grievances, the complaint does not allege that Vollmer had the ability to "remedy the wrong." The mere fact that Vollmer "affirmed the denial of plaintiff's grievance . . . is insufficient to establish personal involvement." *Riley v. Roycroft*, No. 16 CV 2227 (VB), 2017 WL 782917, at *4 (S.D.N.Y. Feb. 28, 2017) (quoting *Joyner v. Greiner*, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002)). This is because "an alleged constitutional violation complained of in a grievance must be 'ongoing' in order to find personal involvement such that the 'supervisory official who reviews the grievance can remedy it directly.'" *Riley*, 2017 WL 782917 at *4 (quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 363 (S.D.N.Y. 2009)). Thus, when a Fourth Amendment violation is not ongoing, a supervisor will not be found to be personally involved on the sole basis of having received a grievance. *See Shepherd v. Fisher*, No. 08-CV-9297 (RA), 2017 WL 666213, at *33 (S.D.N.Y. Feb. 16, 2017) (finding that "even if [the supervising officers] did participate in the adjudication of Plaintiff's grievances regarding these incidents, because Plaintiff has not alleged that either was directly responsible for the supervision and training of the frisking officers, he cannot show that they failed to remedy a wrong of which they were aware."); *Morgan v. Ward*, No. 1:14-CV-7921-GHW, 2016 WL 427913, at *8 (S.D.N.Y. Feb. 2, 2016) (where plaintiff alleged an unconstitutional search, "[a]ssuming that [the supervising officers] did in fact review the plaintiff's grievance, they would have been confronted with an alleged constitutional violation that had already occurred and was not ongoing."). Because the alleged May 19, 2017 and June 8, 2017 searches were discrete

incidents, rather than ongoing violations, Plaintiff has not adequately alleged that Vollmer was personally involved merely by denying Plaintiff's grievance.

Accordingly, Plaintiff's claims against Vollmer are dismissed without prejudice. To the extent Plaintiff is able to allege additional facts that would plausibly establish Vollmer's personal involvement in Abrams' alleged constitutional violations, Plaintiff is granted leave to replead his claim. *See Barnes*, 204 Fed. App'x. at 919.

### ii. Middleton

Plaintiff alleges that Middleton denied his grievance regarding the Aramark commissary, but does not otherwise allege Middleton's involvement in any of Plaintiff's claims. (*See* Compl. at 7.) Because the Court has already dismissed the claims against Aramark with prejudice, Plaintiff's claims against Middleton regarding these alleged violations similarly fail as a matter of law and are dismissed with prejudice.

### iii. Lopez

Plaintiff alleges that Lopez denied Plaintiff's grievance regarding King-Bogle's verbal abuse. (*See* Compl. at 8.) While the Court has already dismissed the claims against the Medical Care Defendants, it has done so without prejudice—accordingly, Plaintiff's claims against Lopez are also dismissed without prejudice. Should Plaintiff choose to replead his claims against the Medical Care Defendants, he is also granted leave to replead additional facts that would plausibly support Lopez's personal involvement in the alleged constitutional violations. *See Barnes*, 204 Fed. Appx. at 919.

## IV. Claims Against Westchester County

Plaintiff has also sued Westchester County, which is a municipality that cannot be held liable simply under a *respondeat superior* theory. *See Monell v. Dep't of Social Servs. of City of*

*New York*, 436 U.S. 658, 691 (1978). The Court therefore must assess whether Plaintiff has sufficiently alleged *Monell* liability as it relates to Plaintiff's remaining unreasonable search claim against Defendant Abrams.

Under *Monell*, a plaintiff must demonstrate "that the municipality itself caused or is implicated in the constitutional violation." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004). This generally requires plaintiff to allege that "(1) an official custom or policy [] (2) subjected [him or her] to (3) a denial of a constitutional right." *Ferrari v. Cty. of Suffolk*, 790 F. Supp. 2d 34, 40 (E.D.N.Y. 2011); *see also Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) ("In order to prevail on a claim against a municipality under [S]ection 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury."). To establish an official custom or policy, a plaintiff must first allege one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*White v. Westchester Cty.*, No. 18-CV-730 (KMK), 2018 WL 6726555, at *10 (S.D.N.Y. Dec. 21, 2018) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010)). Second, the plaintiff must establish a "'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Hayes v. Cty. of Sullivan*, 853 F. Supp. 2d 400, 439 (S.D.N.Y. 2012) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

Even construing the pleadings liberally, Plaintiff has not alleged sufficient facts to plausibly allege Westchester County's liability under *Monell*. To "successfully state a claim for *Monell* liability, a plaintiff must 'make factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policy making authority for the municipality.'" *Nielsen v. City of Rochester*, 58 F. Supp. 3d 268, 277 (W.D.N.Y. 2014) (quoting *Missel v. Cty. of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009)). The Complaint does note that Abrams was employed by the Westchester Department of Corrections ("DOC"), and that the Westchester DOC suspended Abrams from the department. (*See* Compl. at 6, 11.) But this does not come close to alleging an official custom or policy. *Cf. Prado v. City of New York*, No. 12-CV-4239 RJS, 2015 WL 5190427, at *6 (S.D.N.Y. Sept. 3, 2015) (dismissing claim against City of New York, finding "[p]laintiffs have failed to allege any facts that allow the Court to reasonably conclude that the City of New York had a policy or custom that caused [p]laintiffs' alleged constitutional harm"). Plaintiff's claims against Westchester County are therefore dismissed without prejudice. To the extent Plaintiff is able to allege additional facts that would plausibly establish an official Westchester County custom or policy, Plaintiff is granted leave to replead his claim. *See Barnes*, 204 Fed. App'x. at 919.

## CONCLUSION

For the foregoing reasons, the Moving Defendants' motions to dismiss are GRANTED in their entirety:

- Plaintiff's claims against Aramark are dismissed with prejudice;

- Plaintiff's claims against the Medical Care Defendants are dismissed without prejudice;

- Plaintiff's claims against Vollmer are dismissed without prejudice;

- Plaintiff's claims against Middleton are dismissed with prejudice;

- Plaintiff's claims against Lopez are dismissed without prejudice; and

- Plaintiff's claims against Westchester County[4] are dismissed without prejudice.

Plaintiff's Fourth Amendment claim against Defendant Abrams remains.

Plaintiff may file an Amended Complaint within 30 days of the date of this Opinion, on or before March 26, 2020, should he choose to reassert claims that were dismissed without prejudice. Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wishes to remain—aside from those claims dismissed with prejudice per this Order—must be included in the amended complaint. An Amended Civil Rights Complaint form is attached to this Opinion. If Plaintiff elects to file an amended complaint, Defendants shall have thirty days from the date of Plaintiff's filing to respond.

Accordingly, the Clerk of the Court is respectfully directed to terminate the Moving Defendants' motions to dismiss at ECF Nos. 33, 44, and 51. If Plaintiff does not file an Amended Complaint by March 26, 2020, remaining Defendant Abrams is directed to file an answer to the Complaint on or before April 27, 2020. The Clerk of the Court is further directed to mail a copy of this Opinion to Plaintiff at his last address listed on ECF and file proof of service on the docket.

Dated:   February 25, 2020                          SO ORDERED:
         White Plains, New York

                                        _____
                                        NELSON S. ROMÁN
                                        United States District Judge

---

[4] The Court notes that pursuant to its Order, dated May 23, 2018 (ECF No. 6), the Clerk of the Court was instructed to amend the caption of this action and replace the Westchester County Department of Corrections with Westchester County. (*See* ECF No. 6 at 2.)

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.


-against-

_____

_____

_____

_____

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

_____CV_____

(Include case number if one has been assigned)


# COMPLAINT

(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

---

## NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 5/20/16

## I.  LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.  PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

_____

First Name              Middle Initial              Last Name

_____

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

_____

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

_____

Current Place of Detention

_____

Institutional Address

_____

County, City                          State                          Zip Code

## III.  PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

## IV.    DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

_____

First Name                    Last Name                    Shield #

_____

Current Job Title (or other identifying information)

_____

Current Work Address

_____

County, City                              State                    Zip Code

Defendant 2:

_____

First Name                    Last Name                    Shield #

_____

Current Job Title (or other identifying information)

_____

Current Work Address

_____

County, City                              State                    Zip Code

Defendant 3:

_____

First Name                    Last Name                    Shield #

_____

Current Job Title (or other identifying information)

_____

Current Work Address

_____

County, City                              State                    Zip Code

Defendant 4:

_____

First Name                    Last Name                    Shield #

_____

Current Job Title (or other identifying information)

_____

Current Work Address

_____

County, City                              State                    Zip Code

## V.    STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

## VII.  PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____