UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANGELO CARZOGLIO,

Plaintiff,

-against-

THOMAS ABRAMS,

Defendant.

**MEMORANDUM OPINION AND ORDER**

18-CV-04198 (PMH)

PHILIP M. HALPERN, United States District Judge:

Angelo Carzoglio ("Plaintiff"), presently incarcerated at the Attica Correctional Facility and proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983 against Thomas Abrams ("Defendant"), a former captain in the Westchester County Department of Corrections ("WCDOC"). (Doc. 57, "Am. Compl."). Plaintiff alleges that Defendant: (i) subjected him to a strip search in violation of the Fourth Amendment; (ii) searched his cell in violation of the Eighth Amendment; (iii) sexually abused him in violation of the Eighth Amendment; and (iv) denied him access to courts in violation of the First Amendment. (*See generally id.*).

Plaintiff commenced this action on May 10, 2018. (Doc. 2). On February 25, 2020, Judge Román, before whom this matter proceeded before it was reassigned to this Court on April 3, 2020, issued an Opinion and Order dismissing all of Plaintiff's claims except for a Fourth Amendment claim asserted against Defendant, and granting Plaintiff leave to file an amended complaint. (Doc. 56 at 17-18). Plaintiff, on March 16, 2020, filed an Amended Complaint against Defendant and WCDOC, alleging four claims for relief. (Doc. 57). On April 6, 2020, Defendant filed an Answer to the Amended Complaint. (Doc. 59). On April 27, 2020, WCDOC moved to dismiss the Amended Complaint for failure to state a claim for relief. (Doc. 61). On February 3, 2021, the

Court dismissed the four claims for relief in the Amended Complaint as asserted against WCDOC. (Doc. 71).

Discovery was completed on the four claims for relief alleged in the Amended Complaint against Defendant on August 1, 2021. (Doc. 81). Defendant then filed his motion for summary judgment on December 16, 2021, in accordance with a briefing schedule set by the Court. (Doc. 98; Doc. 99; Doc. 100, "Def. 56.1"; Doc. 101; Doc. 102, "Def. Br."). Plaintiff, on January 6, 2022, filed a letter—which the Court construes as his opposition to the instant motion—alongside a purported Rule 56.1 Statement. (Doc. 103, "Opp. Br."; Doc. 106, "Pltf. 56.1"). Plaintiff's 56.1 Statement is dated December 16, 2021, one week past the deadline set by this Court to file same. (Pltf. 56.1; *see also* Docs. 93, 95). Defendant seeks, on this basis, to preclude Plaintiff's Rule 56.1 Statement as untimely. (Doc. 107, "Reply" at 6-7). The Court, in exercising its discretion, considers the content of Plaintiff's late statement in connection with the instant motion.[1] The Court, however, only considers those responses that are supported by admissible record evidence to controvert the factual statements set forth in Defendant's Local Civil Rule 56.1 Statement. Statements made by Defendant that are supported by admissible evidence and not refuted by Plaintiff will be deemed admitted. See *Mirza v. Garnet Health*, No. 20-CV-00556, 2022 WL 826410, at *2 n.6 (S.D.N.Y. Mar. 17, 2022) ("[S]tatements in the 56.1 Counterstatement supported

---

[1] *See Vasquez v. Yadali*, No. 16-CV-00895, 2022 WL 1597693, at *2 n.6 (S.D.N.Y. May 19, 2022) (considering the substance of the plaintiff's arguments in various filings as responses to the defendants' Rule 56.1 statement even when the plaintiff did not submit a statement of his own); *Casanova v. Maldonado*, No. 17-CV-01466, 2021 WL 3621686, at *2 n.4 (S.D.N.Y. Aug. 16, 2021) (same, noting that "[w]hile *pro se* litigants are . . . not excused from meeting the requirements of Local Rule 56.1 . . . where a *pro se* plaintiff fails to submit a proper Rule 56.1 Statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." (quoting *Wiggins v. Griffin*, No. 18-CV-07559, 2021 WL 706720, at *1 n.1 (S.D.N.Y. Feb. 22, 2021) (alterations in original))).

by admissible evidence and not refuted with citation to admissible evidence provided to the Court are deemed admitted.").[2]

Defendant's motion for summary judgment was fully submitted upon the filing of his reply brief on January 31, 2022. For the reasons set forth below, Defendant's motion is GRANTED.

## BACKGROUND

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion and draws them from: (1) the Amended Complaint; (2) Defendant's Rule 56.1 Statement; (3) Plaintiff's 56.1 Statement; and the Declaration of Sean T. Carey along with the exhibits annexed thereto (Doc. 98, "Carey Decl."), which include *inter alia*: (i) Defendant's Affidavit, sworn to on September 22, 2021 (Doc. 98-4, "Def. Aff."); (ii) a transcript of Plaintiff's deposition, conducted on May 21, 2021 (Doc. 98-5, "Pltf. Dep."); and relevant video footage (Doc. 98-10).[3]

Plaintiff's claims all arise from a series of searches conducted on May 19, 2017 and June 8, 2017. (Def. 56.1 at 2). Plaintiff, at all relevant times, was a convicted prisoner at Westchester County Jail ("WCJ"). (*Id.*). Defendant was a captain in WCDOC at WCJ until he retired on June 12, 2017. (*Id.*). Defendant's last day working at WCJ was on June 6, 2017. (*Id.* at 12).

I. The May 19, 2017 Searches

Five searches were conducted of Plaintiff on May 19, 2017. (*Id.* at 3). The "first search" occurred in the WCJ law library at approximately 7:55 PM. (*Id.*). Defendant ordered this search,

---

[2] *See also Wilson v. Annucci*, No. 18-CV-00391, 2020 WL 1979210, at *3 (N.D.N.Y. Apr. 23, 2020) (noting that *pro se* plaintiffs opposing a motion for summary judgment were "required to submit admissible evidence"), *adopted by* 2020 WL 5229375 (N.D.N.Y. Sept. 2, 2020); Local Civil Rule 56.1(d) ("Each statement by the movant or opponent pursuant to 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

[3] Copies of the video recordings were provided to Chambers on a CD. The Court cites the placeholder docket entry number (i.e., Doc. 98-10) when referencing portions of the videos herein.

whereby C.O. Curry ("Curry") conducted a pat and frisk of Plaintiff and five other inmates. (*Id.* at 3-4; Doc. 98-10 at 19:59:45-20:00:51). Sergeant Alfred Lombardo ("Lombardo") saw Plaintiff shortly thereafter, on camera in the library, remove an unidentified object from an accordion folder and take it into an area of the library not visible to the camera. Plaintiff remained out of view for nearly four seconds until another inmate came to the same corner a few seconds later. (*Id.* at 4; Doc. 98-10 at 20:03:57-20:04:21). Plaintiff explains in his deposition that the corner in the blindspot is where he stores legal documents in a filing cabinet that is only accessible to him and one other inmate, whom he could not name. (Pltf. Dep. 24:15-26:24). Based on this activity, Lombardo ordered Curry and C.O. Rodriguez ("Rodriguez") to return to the law library and conduct the "second search" and advised Defendant of his order. (Def. 56.1 at 5). During the second search, Plaintiff alleges that Curry inappropriately touched his buttocks. (Pltf. Dep. at 16:25-17:1).

After reviewing video footage of the first two searches, Defendant ordered Curry and Rodriguez to return to the law library for the third and fourth searches. (Def. 56.1 at 6). Defendant purports to have ordered the third and fourth searches in part due to knowledge of Plaintiff's discipline report from February 2016 for concealing a weapon.[4] (*Id.* at 5; *see also* Doc. 98-6).

The "third search" occurred when Curry and Rodriguez conducted a search of the law library. (Def. 56.1 at 6). The "fourth search" was a strip search conducted by Curry and Rodriguez in the male booking area of WCJ, where Sergeant Derrick McWilliams ("McWilliams") was working as the booking supervisor. (*Id.* at 7). Plaintiff alleges that McWilliams made "sexual comments" to Plaintiff while he was naked, and that Curry and Rodriguez were amused by the

[4] Plaintiff admits to having incurred this citation for concealing a piece of wood in his underwear. (Pltf. Dep. at 67:19-20).

comments. (Pltf. 56.1 at 3). Defendant ordered the final search of May 19, 2017 at approximately 9:30 PM, after Plaintiff returned to his cell. (Def. 56.1 at 8). Defendant is unable to recall if he ordered this search because of Plaintiff's conduct or if it was a random and/or routine search of Plaintiff's housing block. (*Id.*). Plaintiff maintains that, during the "fifth search," Curry and Rodriguez searched his cell and that Curry conducted another pat and frisk of Plaintiff, once again groping his buttocks and laughing while doing so. (Pltf. Dep. at 20:3-4).

II. The June 8, 2017 Searches

Plaintiff alleges that, on June 8, 2017, two additional searches were conducted by WCJ staff—a search of the materials with him at the law library and a strip search in the male booking area. (Pltf. 56.1 at 5-6). Although Defendant was not working at WCJ on that day, Plaintiff argues that fact "doesn't mean [Defendant] didn't order [the searches]." (*Id.* at 6). Plaintiff alleges that the officers who searched him on June 8th told him that Defendant ordered the searches. (*Id.*).

This litigation followed.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F. Supp. 3d 714, 722 (S.D.N.Y. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when

determining whether summary judgment is appropriate, "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence; the task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial . . . ." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)). Claims simply cannot proceed in the absence of sufficient proof as to an essential element.

"It is the movant's burden to show that no genuine factual dispute exists," *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)), and a court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts . . . ." *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, "[i]f there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must establish also its "entitlement to judgment as a matter of law." *In re Davis New York Venture Fund Fee Litig.*, 805

F. App'x 79, 80 (2d Cir. 2020) (quoting *FIH, LLC v. Found. Capital Partners LLC*, 920 F.3d 134, 140 (2d Cir. 2019)). Stated simply, the movant must establish that the law favors the judgment sought. *Gonzalez v. Rutherford Corp.*, 881 F. Supp. 829, 834 (E.D.N.Y. 1995) (explaining "that summary judgment is appropriate only when . . . law supports the moving party"); *Linares v. City of White Plains*, 773 F. Supp. 559, 560 (S.D.N.Y. 1991) (explaining that summary judgment is appropriate when "the law so favors the moving party that entry of judgment in favor of the movant . . . is proper").

The Court is, of course, mindful that "[*p*]*ro se* litigants are afforded a special solicitude," which includes reading their filings "to raise the strongest arguments they suggest." *Mortimer v. City of New York*, No. 15-CV-07186, 2018 WL 1605982, at *9 (S.D.N.Y. Mar. 29, 2018) (internal quotation marks omitted). "It is through this lens of leniency towards *pro se* litigants that this Court must consider a defendant's motion for summary judgment against a *pro se* plaintiff." *Adams v. George*, No. 18-CV-02630, 2020 WL 5504472, at *5 (S.D.N.Y. Sept. 8, 2020). This status does not, however, excuse a *pro se* litigant from making the showing required to defeat summary judgment; he or she must offer more than "bald assertions, completely unsupported by evidence" to overcome the motion. *Wisdom v. Loiodice*, No. 17-CV-04837, 2020 WL 4431590, at *4 (S.D.N.Y. July 31, 2020); *see also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (explaining that the mere fact that a litigant is *pro se* "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment" (internal quotation marks omitted)); *Ross v. Koenigsmann*, No. 14-CV-01321, 2017 WL 9511096, at *1 (N.D.N.Y. Aug. 16, 2017), *adopted sub nom. Ross v. Mannava*, 2017 WL 4338883 (N.D.N.Y. Sept. 29, 2017).

However, the degree of special solicitude due a *pro se* litigant depends upon that particular party's litigation experience, as "the degree of solicitude may be lessened where the particular *pro*

*se* litigant is experienced in litigation and familiar with the procedural setting presented." *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010). The Court takes note of Plaintiff's litigation experience, as he described it in his deposition on May 23, 2021. Plaintiff states therein that he is "[n]ot only interest[ed] [in the law], but . . . actually studying and hopefully in the near future . . . taking [the] Bar exam." (*id.* at 23:12-15). Plaintiff also states in the same deposition that he is litigating four currently pending cases *pro se*—this matter, two civil cases, and a criminal case (*id.* at 14:5-8)— that he has "read a lot of case law" (*id.* at 62:5), and that he gives legal advice to other inmates in their ongoing cases (*id.* at 22). Despite this purported wealth of legal experience, the Court will, nevertheless, grant Plaintiff *pro se* special solicitude in reviewing his opposition papers.

## ANALYSIS

Plaintiff's claims against Defendant are made pursuant to 42 U.S.C. § 1983. That statute provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021). Plaintiff makes four claims for relief under § 1983: (i) a strip search claim under the Fourth Amendment; (ii) a cell search claim under the Eighth Amendment; (iii) a sexual abuse claim under the Eighth Amendment; and (iv) an access to courts claim under the First Amendment. (*See generally* Am. Compl.). The Court addresses these claims *seriatim*.

I. Claim No. 1: The Strip Search Claim (Fourth Amendment)

Plaintiff's first claim for relief is grounded in the Fourth Amendment and is based on the fourth search of May 19, 2017 and the strip search of June 8, 2017.

A. The May 19 Strip Search

Although Plaintiff complains of five searches conducted on May 19, only the fourth search that day is relevant to the strip search claim. Defendant admits that he ordered the fourth search. (Def. 56.1 at 6). During that search, Curry and Rodriguez brought Plaintiff into the male booking area and conducted a strip search with the booking supervisor, McWilliams, present. (*Id.* at 7). Plaintiff contends that McWilliams, looking on, made "verbal, sexual comments" to him while he was naked. (Pltf. 56.1 at 3).

The Fourth Amendment prohibits only unreasonable searches. *Carroll v. United States*, 267 U.S. 132, 147 (1925). "There is a long-established principle that the routine, random strip searches of inmates, including body cavity inspections, do not violate the Fourth Amendment." *Vaughn v. Strickland*, Nos. 12-CV-02696, 12-CV-03335, 12-CV-02995, 12-CV-03333, 2013 WL 3481413, at *4 (S.D.N.Y. July 11, 2013) (internal quotation omitted). "Nevertheless, 'the Fourth Amendment still requires all searches conducted within a prison, including strip searches, to be reasonable.'" *Id.* (quoting *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006), *aff'd*, 461 F. App'x 18 (2d Cir. 2012)).

The test of reasonableness under the Fourth Amendment requires a balancing of the need for the search against the invasion of personal rights that it entails. *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). In that regard, "[a] detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence." *Torres v. City of New York*, No. 17-CV-06604, 2019 WL 4784756, at *5 (S.D.N.Y.

Sept. 30, 2019). Notwithstanding, "inmates retain a limited right to bodily privacy under the Fourth Amendment." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (noting that "maintenance of prison security is not burdened unduly by the recognition that inmates do retain a limited right to bodily privacy").

"[I]f the inmate's Fourth Amendment claim challenges an isolated search [such as the strip search on May 19], courts typically apply the standard set forth in *Bell v. Wolfish*." *Harris*, 818 F.3d at 58 (internal citation omitted). The *Bell* four-factor test of reasonableness requires courts to consider: (1) the scope of the intrusion; (2) the manner in which the search was conducted; (3) the justification for commencing the search; and (4) the place in which the search was conducted. *Torres*, 2019 WL 4784756, at *5 (citing *Bell*, 441 U.S. at 559).

There is no doubt, upon application of the *Bell* factors, that the strip search on May 19 was reasonable.

As regards the first *Bell* factor (i.e. the scope of the intrusion), the Second Circuit has stated that there are two relevant issues to consider: (i) the type of search; and (ii) the sex of the person conducting it. *Harris*, 818 F.3d at 58. It is undisputed that the type of search conducted in the fourth search was a "strip search" (Def. 56.1 at 6; Pltf. 56.1 at 3), which is "an inspection of a naked individual, without any scrutiny of the subject's body cavities." *Harris*, 818 F.3d at 58. Such a search is inherently invasive because "[a] strip search that involves a stranger peering without consent at a naked individual, and in particular at the most private portions of that person's body, is a serious invasion of privacy." *Id.* (internal quotation omitted). However, as to the person conducting the search, the officers were the same sex as the Plaintiff. (Def. 56.1 at 6). Thus, unlike in *Harris*, the first *Bell* factor as to the scope of the intrusion weighs in favor reasonableness. *Harris*, 818 F.3d at 59 (finding cross-gender strip searches to aggravate the scope of the intrusion);

*see also Sankara v. Plaskett*, No. 15-CV-08470, 2017 WL 4444250, at *3 (finding reasonable a strip search performed by a member of the same sex).

The remaining *Bell* factors similarly weigh in favor of reasonableness. The propriety of the manner of the strip search, which did not involve any inappropriate touching, is uncontroverted. (Def. 56.1 at 6-7; Pltf. Dep. at 31:13-20). "A strip search conducted in a professional manner is more reasonable than one that is not." *Harris*, 818 F.3d at *59-60. The record here is barren of any evidence that the search was conducted in anything but a professional manner, as there was no violence or coercion involved.[5] *See Sankara*, 2017 WL 4444250 at *3 (finding the manner of search reasonable where "there [were] no allegations of force or other abusive behavior").

As to the third *Bell* factor (i.e., the justification), Defendant justified the search based on: (i) witnessing Plaintiff acting suspicious off camera; and (ii) knowledge of Plaintiff's previous discipline in WCJ for hiding and possessing a weapon. (Def. Br. at 11). Plaintiff does not dispute the facts underlying either of these purported justifications. (*See* Pltf. Dep. at 67:19-20; 25:9-15). Defendant has met his burden of proving justification under these circumstances, even though, as Plaintiff argues, no contraband was ultimately found. *See Crawford v. Cuomo*, 796 F.3d 252, 257-59 (2d Cir. 2015) ("[s]earches that do not uncover contraband may be no less penologically justified than those that do"); *see also Torres*, 2019 WL 4784756, at *5 (finding a "legitimate penological reason" for conducting a body cavity search based on *observations* of plaintiff's suspicious conduct, which indicated that he was hiding contraband); *Thomas v. Jacobs*, No. 19-CV-06554, 2022 WL 504787 at *9 (same).

---

[5] Even if McWilliams made inappropriate comments, as Plaintiff maintains, that would not alter the conclusion as to the second *Bell* factor. *See Vann*, 2018 WL 6199860, at *5("[A]n officer's inappropriate comments, without additional allegations such as physical or sexual abuse, do not make unreasonable an otherwise reasonable search." (citing *Malik v. City of New York*, 2012 WL 3345317, at *13 (S.D.N.Y. Aug. 15, 2012)).

Finally, as to the fourth *Bell* factor (i.e., the location), it is undisputed that the search occurred in the male booking area at WCJ. (Def. 56.1 at 6). The male booking area is an off-camera area designed to provide privacy for inmates while being strip searched. (Def. Br. at 11). These circumstances weigh in favor of reasonableness under the fourth *Bell* factor. *See Thomas*, 2022 WL 504787 at *9 ("The search here was conducted in a private strip-frisk room . . . this does not strike the Court as excessive or unnecessary, and weighs in favor of reasonableness.").

The Court concludes, based upon the undisputed facts, that the May 19 strip search was reasonable in light of all four *Bell* factors.

B. <u>The June 8 Strip Search</u>

Plaintiff claims that Defendant is liable under § 1983 in connection with the strip search conducted on June 8, 2017. However, as a fundamental prerequisite "[t]o establish[ing] a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation." *Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). That Defendant was not involved in the events of June 8 renders any claim based on the events of that day "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotation marks omitted). Simply being a supervisor is not enough to impute personal involvement onto a defendant; liability exists only where the "defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation omitted).

It is undisputed that Defendant was not working at WCJ on June 8, 2017. (Pltf. 56.1 at 6). Plaintiff, however, contends that Defendant was personally involved in the events of June 8 because Defendant ordered the searches before leaving work on June 6. (*Id.*). Defendant denies this outright and Plaintiff provides no evidence to the contrary besides his own speculation. (*See*

Def. Aff. at 1; Pltf. 56.1 at 6). Simply having been a supervisor of the guards who conducted the June 8 searches is not sufficient to impute liability to Defendant. *Tangreti*, 983 F.3d at 618. Given Defendant's express denial of knowledge or responsibility, and in the absence of proof to the contrary, Plaintiff's conclusory allegations are insufficient to raise an issue of fact and to avoid summary judgment. *See Brown v. Artus*, 647 F. Supp. 2d 190, 200 (N.D.N.Y. 2009) (citing *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002) and *Russo v. City of Bridgeport*, 479 F.3d 196, 210-11 (2d Cir. 2007)). The Court concludes that the June 8 strip search is not actionable against Defendant in light of his lack of personal involvement.

The Court therefore grants Defendant's motion for summary judgment as to the strip search claim, with regard to both the May 19 and June 8 searches.

II. Claim No. 2: The Cell Search Claim (Eighth Amendment)

Plaintiff's second claim is that the fifth search on May 18, 2017, a cell search, violated his constitutional rights. At all relevant times, Plaintiff was a convicted prisoner at WCJ. (Def. Br. at 6, n.2; Am. Compl. at 2). Therefore, the Court must assess Plaintiff's cell search claim under the strictures of the Eighth Amendment. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Prisoners, unlike pretrial detainees, retain no Fourth Amendment reasonable expectation of privacy against searches of their cells, even those made to harass. *Willis v. Artuz*, 301 F.3d 65, 68-69 (2d Cir. 2002). "The only constitutional limit on the search of a prison cell is imposed by the Eighth Amendment's bar against cruel and unusual punishment." *Jones v. Harris*, 665 F. Supp. 2d 384, 394-95 (S.D.N.Y. Oct. 13, 2009).

An Eighth Amendment claim based on a cell search requires a showing that Defendant "'ordered the search . . . with the specific intent to cause plaintiff harm and that the search . . . in fact caused him harm.'" *Id.* (quoting *Lashley v. Wakefield*, 367 F. Supp. 2d 461, 470 (W.D.N.Y.

2005)). Moreover, the violation must be: (i) objectively serious, and (ii) committed by a defendant with subjective culpability. *See id.* There is no dispute that Defendant ordered a single search of Plaintiff's cell. (*See generally* Def. 56.1 at 8-9). A single cell search is not objectively serious enough to violate the Eighth Amendment under Second Circuit case law. *Stewart v. Richardson*, No. 15-CV-09034, 2019 WL 719638, at *5-6 (S.D.N.Y. Feb. 20, 2019) (collecting cases and finding three cell searches in the span of five weeks was not objectively serious, noting only that courts have found daily searches over the span of more than a month to be objectively serious); *see also Corley v. City of New York*, No. 14-CV-03202, 2017 WL 4357662, at *15 (S.D.N.Y. Sept. 28, 2017) (dismissing a Fourth Amendment claim made by a pretrial detainee for 30 cell searches as not an excessive amount). Plaintiff points to no case—and the Court has not found any—in which a single cell search was deemed objectively serious. Therefore, regardless of Defendant's state of mind, the cell search claim fails as a matter of law. *See generally Jones*, 665 F. Supp. 2d at 395.[6]

The Court therefore grants Defendant's motion for summary judgment as to the cell search claim.

[6] Assuming, *arguendo*, that the objective prong was met, Plaintiff does not dispute the facts underlying Defendant's purported rationale for the search, which was to look for weapons based on Plaintiff's history—which, as discussed *supra*, is a legitimate penological interest. *See Nilsson v. Coughlin*, No. 86-CV-07135, 1987 WL 12823, at *4 (S.D.N.Y. June 18, 1987) ("[A] prisoner maintains the right under the Eighth Amendment to be free from searches which are *unrelated to prison needs*, but rather calculated to harass." (emphasis added)). Defendant, therefore, would be entitled to summary judgment on this claim under the subjective prong as well.

III. Claim No. 3: The Sexual Abuse Claim (Eighth Amendment)

Plaintiff's sexual abuse claim is based on three of the searches conducted on May 18, 2017,[7] and the strip search conducted on June 8, 2017. In light of the Court's findings herein, the actionable events remaining in this claim are the second and fifth searches on May 18, 2017.[8]

Plaintiff's sexual abuse claim, as with his cell search claim, is assessed under the strictures of the Eighth Amendment. "Under the Eighth Amendment, conditions of confinement 'must not involve the wanton and unnecessary infliction of pain.'" *Vann*, 2018 WL 6199860, at *6 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "[S]exual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment." *Boddie v. Schnieder*, 105 F.3d 857, 860-61 (2d Cir. 1997). Moreover, the violation must be (i) objectively serious, and (ii) committed by a defendant with subjective culpability. *See e.g., Castro-Sanchez v. N.Y.S. Dep't of Corr. Servs.*, No. 10-CV-08314, 2012 WL 4474154, at *2-3 (S.D.N.Y. Sept. 28, 2012).

There is no evidence that the conduct complained of here was objectively serious. Plaintiff testified that Curry's "groping" of Plaintiff's buttocks during each pat and frisk lasted for no more than 3 seconds. (Pltf. Dep. at 30:3-5; 35:5-10). Courts have consistently found such brief contact fails to establish an Eighth Amendment violation as a matter of law. *See, e.g., Boddie*, 105 F.3d at 861 (upholding dismissal of sexual abuse claim based on an officer grabbing an inmate's penis and making lewd comments toward him); *Cole v. Suffolk Cnty. Corr. Facility*, No. 20-CV-01883,

[7] Those three searches are: (a) the second search, a pat and frisk conducted by Curry; (b) the fourth search, a strip search conducted by Curry, Rodriguez, and McWilliams; and (c) the fifth search, a pat and frisk conducted by Curry while Rodriguez conducted the cell search.

[8] As set forth *supra*, Defendant was not personally involved in any conduct occurring on June 8, 2017, and the fourth search on May 18, 2017 was a reasonable, constitutionally appropriate strip search.

2020 WL 2113205, at *3-4 (E.D.N.Y. May 4, 2020) (finding two instances of an officer groping an inmate's penis to be "too similar to the type of incidental contact accompanying a run-of-the-mill pat down to reasonably infer any inappropriate touching or malicious intention."); *Scalpi v. Amorim*, No. 14-CV-02126, 2018 WL 1606002 (S.D.N.Y. Mar. 29, 2018) (collecting cases and finding that courts in the Second Circuit consistently find no violation for brief contact with an inmate's breasts or genitals during a pat down); *Castro-Sanchez*, 2012 WL 4474154, at *2-3 (officer's groping of inmate's buttocks not sufficiently serious); *cf. Crawford*, 796 F.3d 252 (fondling plaintiff's penis in front of plaintiff's wife with accompanying demeaning comments was sufficiently serious). Even assuming, as Plaintiff alleges, that Curry groped his buttocks for no more than three seconds on two different occasions, this does not meet the level of objective seriousness set forth in relevant Second Circuit case law.

Moreover, even if the conduct were objectively serious, there is no evidence that Defendant was subjectively culpable. When analyzing the subjective prong of a sexual abuse claim, "the principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate." *Crawford*, 796 F.3d at 257-58. Plaintiff's sole evidence as to the subjective prong is that Curry (i.e., not Defendant) laughed at him while conducting the second pat and frisk. As a matter of law, this does not raise an issue of material fact as to subjective culpability, even if the claim were proceeding against *Curry*. *See e.g., Castro-Sanchez*, 2012 WL 4474154, at *3 (officer calling inmate a "sexy black devil" during a pat and frisk insufficient for the Eighth Amendment). Moreover, there is simply no evidence as to *Defendant's* state of mind. Defendant denies outright having ordered the searches to be conducted in a sexually abusive way (Def. Aff. at 6) and Plaintiff admits lacking personal knowledge as to Defendant's state of mind.

(Pltf. Dep. 44:17-45:25). Plaintiff did not speak to Defendant about the events, there is no evidence that Defendant watched the searches to gratify himself, and no witness has stated that Defendant ordered the searches *to be conducted inappropriately* other than the speculation of one unnamed individual, who Plaintiff alleges said that he "wouldn't be surprised" if that were the case. (Pltf. Dep. 71:13-15). This unsubstantiated hearsay is insufficient evidence of Defendant's subjective state of mind to survive summary judgment. Thus, Plaintiff's sexual abuse claim fails as a matter of law under both the objective and subjective prongs of Eighth Amendment analysis.

For the foregoing reasons, the Court grants Defendant's motion for summary judgment as to the sexual abuse claim.

IV. Claim No. 4: The Access to Courts Claim (First Amendment)

Plaintiff's fourth claim is that Defendant deprived him of access to courts when, during the first and third searches on May 19, Curry and Rodriguez "tampered" with Plaintiff's legal materials and "distracted" him from legal work on another case. (Opp. Br. at 19). Access to courts claims are grounded in the First Amendment. *See Coke v. Koeningsman*, No. 19-CV-10038, 2021 WL 3115438, at *10 (S.D.N.Y. July 22, 2021). "To establish a denial of access to courts claim, plaintiff must demonstrate not only that defendants deliberately or maliciously 'took or w[ere] responsible for actions that hindered plaintiff's efforts to pursue a legal claim,' but 'that the defendant[s'] actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim.'" *Stewart*, 2019 WL 719638, at *8 (quoting *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003)); *see also Gunn v. Doe*, No. 20-CV-00730, 2020 WL 1140746, at *2 (S.D.N.Y. Mar. 6, 2020). The record is devoid of any evidence of actual injury. Ruffling through papers and distracting an inmate on a single occasion is insufficient to establish actual injury for an access to courts claim. *See Stewart*, 2019 WL 719638, at *8 (granting summary judgment dismissing an

inmate's access to courts claim where officers confiscated and destroyed plaintiff's legal papers, and plaintiff alleged that he lost lawsuits because of the missing paperwork); *Conley*, 2017 WL 4357661, at *8 (dismissing an access to courts claim where prison officials destroyed and disorganized an inmate's legal papers because plaintiff alleged no actual injury even though he had to spend hours reorganizing). Plaintiff was not prejudiced in any of his legal actions because of Defendant's conduct and thus, Plaintiff's access to courts claim fails as a matter of law.

The Court therefore grants Defendant's motion for summary judgment as to the access to courts claim.

## CONCLUSION

For the foregoing reasons, the motion for summary judgment is GRANTED and the Amended Complaint against Defendant is dismissed with prejudice in its entirety. The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 98, enter judgment in favor of Defendant, mail a copy of this Memorandum Opinion and Order to Plaintiff, and close this case.

**SO ORDERED**:

Dated: White Plains, New York
June 17, 2022

Philip M. Halpern
United States District Judge